THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES PLACEK, Defendant-Appellant.

First District (6th Division)   No. 1—95—4398

Opinion filed September 26, 1997.

ZWICK, J., dissenting.

Michael A. Johnson and Ronald S. Tulin, both of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Maria D. MacKenzie, and Nancy Faulls, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

A jury found defendant James Placek guilty of delivery of a controlled substance. This was the second time defendant was tried on that charge. Initially, defendant was tried and convicted of delivery of a controlled substance, possession of a controlled substance with intent to deliver, and theft. However, the trial court granted defendant's motion for a new trial because defendant demonstrated that the Illinois Supreme Court found the theft charges upon which he was tried unconstitutional in *People v. Zaremba*, 158 Ill. 2d 36, 630 N.E.2d 797 (1994).

Prior to his second trial, defendant argued a motion *in limine* to exclude certain evidence. The court ruled that the State could introduce evidence that marijuana and stolen auto parts were recovered on defendant's Will County property, without addressing the admissibility of a recovered stolen gun.

Defendant then filed a motion to dismiss the indictment. Defendant argued that because the State knew or should have known that the theft statute was unconstitutional, the subsequent prosecution violated constitutional guarantees against double jeopardy. The court denied the motion.

In response to the State's charges, defendant raised the defense of entrapment at trial. Defendant claimed that he did not have the propensity to commit the crimes with which he was charged. The evidence established that defendant was the focus of an undercover police investigation from the summer of 1991 until the fall of 1993. This investigation targeted auto theft crimes in south suburban Chicago. In March of 1993, defendant was introduced to undercover police officer Kim Castro. Over the next few months, Officer Castro sold defendant what defendant believed to be stolen automobile parts. At trial, Officer Castro testified that, during his interactions with defendant, their conversations often turned to drugs. Defendant stated that he used marijuana. Defendant informed Castro that he had connections for both marijuana and cocaine. After defendant informed Castro that his drug connection had been arrested, Officer Castro indicated that he could introduce defendant to a supplier. On at least three occasions, defendant did not accept Officer Castro's invitation to engage in drug transactions. On one occasion, however, defendant agreed to assist Officer Castro's "boss" in obtaining drugs.

Officer Castro approached defendant and informed him that Castro's boss was in need of a cocaine supplier. On July 14, 1993, defendant informed Castro that he could obtain four ounces of cocaine at $1,000 per ounce. Defendant claimed that he was unable to make the connection immediately and arranged for a meeting on the morning

of July 22, 1993. On July 22, 1993, defendant and Castro met at a McDonald's restaurant. Castro was with undercover police officer Cornier, whom defendant believed to be an associate of Castro's boss. Defendant directed Castro to meet him at defendant's storage locker in the Space Place storage facility. Upon arrival, defendant let Castro and Cornier into the facility and the group proceeded to defendant's locker. Defendant retrieved four large plastic bags and then began to weigh the substance on a triple-beam scale. While defendant was weighing the substance, other officers arrived and arrested defendant.

Officer Castro testified on direct examination that, subsequent to defendant's arrest, defendant signed a consent to search defendant's property in Will County, Illinois. As a result of the search, officers recovered a stolen gun, stolen automobile parts, and marijuana. The defendant objected to the State's reference to the stolen gun and the stolen automobile parts and the court sustained the objection. However, on cross-examination defense counsel questioned Officer Castro about defendant's possession of the gun. When Officer Castro testified on redirect that the gun was stolen, the defendant objected and the court sustained the objection.

Defendant testified on his own behalf. In his direct testimony, defendant acknowledged that the gun recovered on his Will County property was reported stolen. Defendant testified that he bought and sold auto parts under the name of Sans Dealer Service. Defendant claimed that he only agreed to obtain cocaine for Castro because defendant wanted Castro to continue supplying him with auto parts.

At the close of evidence, the trial court instructed the jury:

"Evidence has been received that the defendant has been involved in conduct other than those [sic] charged in the indictment.

This evidence has been received on the issues of the defendant's design and predisposition to commit a crime and may be considered by you only for that limited purpose.

It is for you to determine whether the defendant was involved in that conduct and, if so, what weight should be given to this evidence on the issues of design and predisposition to commit a crime."

Defendant was convicted and sentenced to 16 years' imprisonment.

Defendant appeals, claiming that: (1) the trial court improperly denied defendant's motion to dismiss on double jeopardy grounds; (2) he was prejudiced by the admission of other crimes evidence which had no probative value to the charge of delivery of a controlled substance charge; (3) the State improperly introduced evidence that

defendant was associated with convicted drug conspirators; (4) the State improperly elicited evidence of defendant's alleged racial slurs; and (5) defendant was not proved guilty beyond a reasonable doubt. We affirm.

On appeal, defendant argues that the trial court erred in denying defendant's motion to dismiss on double jeopardy grounds. Defendant claims that constitutional guarantees against double jeopardy barred the subsequent prosecution because the State was grossly negligent in prosecuting defendant for both theft and delivery when it knew or should have known that the Illinois Supreme Court had ruled the theft statute unconstitutional one year before defendant's trial.

■ The double jeopardy clauses of the federal and state constitutions "bar further prosecution of an offense which has been formerly prosecuted where: a conviction has been reversed on appeal for insufficiency of the evidence [citations], and, where there was prosecutorial or judicial misconduct at trial which was intended to and did provoke defendant into requesting a mistrial." *People v. Marchbanks*, 125 Ill. App. 3d 796, 798, 466 N.E.2d 668, 670 (1984).

■ In the instant case, it was the *defendant* that moved to consolidate the delivery and possession charges. The court granted defendant's second consolidation motion over the State's objection. These facts do not support defendant's assertion that the State was "grossly negligent" or that the State acted intentionally in seeking the initial prosecution under the unconstitutional statute. See *People v. Collins*, 48 Ill. App. 3d 643, 362 N.E.2d 1118 (1977). We will not reverse the trial court's ruling where it is apparent that the defendant injected the error into the proceedings. See *People v. Brown*, 275 Ill. App. 3d 1105, 657 N.E.2d 642 (1995); *People v. Abston*, 263 Ill. App. 3d 665, 635 N.E.2d 700 (1994).

Defendant then claims he was prejudiced by the admission of certain evidence. Specifically, defendant claims the trial court should not have admitted evidence that: (1) defendant dealt in stolen automobile parts; and (2) subsequent to his arrest on the current charges, the police recovered marijuana, a stolen gun, and stolen automobile parts on his Will County property. We note that in arguing its motion *in limine*, the defense made no effort to redact the scope of admissible evidence. Rather, the defense argued that all of the "specifics" concerning the evidence of other crimes should be excluded. The State argues that this evidence was admissible to rebut the defendant's defense of entrapment. We agree.

■ While evidence of other crimes is inadmissible to establish a defendant's criminal propensity, such evidence is admissible where relevant for any other purpose. See *People v. Robinson*, 167 Ill. 2d 53,

656 N.E.2d 1090 (1995). This court has held that evidence of other crimes is admissible to disprove the defense of entrapment. *People v. Millighan*, 265 Ill. App. 3d 967, 638 N.E.2d 1150 (1994); see also *People v. Kimbrough*, 138 Ill. App. 3d 481, 485 N.E.2d 1292 (1985). The trial court must weigh the unfair prejudicial effect versus the probative value of admitting such evidence, and the court's determination will not be reversed absent a clear abuse of discretion. *Robinson*, 167 Ill. 2d 53, 656 N.E.2d 1090.

■ To prove a defense of entrapment, the evidence must show that the State improperly induced the defendant to commit the crime and the defendant's lack of predisposition to commit the crime. 720 ILCS 5/7—12 (West 1992); *People v. Salazar*, 284 Ill. App. 3d 794, 800, 672 N.E.2d 803, 808 (1996). Under the facts of this case, the trial court did not abuse its discretion in admitting the evidence that related to the underlying relationship between Officer Castro and defendant. Both the State and the defense acknowledged the importance of the prior relationship to a determination of defendant's inducement by the State. In fact, defendant testified that he sold the cocaine to Officer Castro so that Castro would continue to sell defendant the stolen auto parts. The trial court issued a curative instruction which provided that this evidence was to be received for a limited purpose. *People v. Wilson*, 257 Ill. App. 3d 826, 629 N.E.2d 582 (1994). Accordingly, we find no reversible error in the admission of evidence that defendant dealt in stolen automobile parts.

■ Similarly, we reject defendant's claim that the admission of evidence that marijuana, a stolen gun, and stolen automobile parts were recovered on his Will County property constituted reversible error. The trial court ruled that the State could introduce evidence that marijuana was recovered as it tended to counter defendant's entrapment claim. We do not find that the trial court abused its discretion in allowing this evidence. As to the stolen gun and the stolen automobile parts, the defense objected to such testimony and the trial court sustained the objection. We find that, because the trial court sustained defendant's objections to the testimony, any resulting prejudice was cured. *People v. Figgs*, 274 Ill. App. 3d 735, 654 N.E.2d 555 (1995).

■ Next, defendant claims the admission of incompetent evidence in the State's case that defendant was associated with Dickie Messino and Clemente Messino prejudiced defendant's chances of receiving a fair trial and constituted a material factor in defendant's conviction for delivery of a controlled substance. Defendant argues that Dickie and Clemente Messino were notorious drug dealers in his community and the State's attempts to associate defendant with the Messinos was unduly prejudicial.

We find that defendant waived review of this issue. Officer Castro testified that, in his meetings with defendant, defendant stated that he was receiving cocaine from Dickie Messino. The defendant failed to object to this testimony and failed to raise this issue in his motion for a new trial. This constitutes waiver under *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988).

Officer Castro then testified that Clemente Messino dealt in stolen auto parts. Defendant objected and asked for a sidebar. At the sidebar, defendant claimed that he filed a motion *in limine* to exclude evidence about the Messino brothers. The prosecutor pointed out there was no motion *in limine* concerning Clemente Messino. The record supports the prosecutor's assertion. Officer Castro then testified without defense objection that Clemente Messino was jailed for drug trafficking.

Defense counsel also questioned Castro about Clemente Messino. During closing arguments, defense counsel did not object to the State's reference to the defendant's cocaine source. Therefore, we find defense counsel failed to properly preserve these issues for review. *Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.

■ Similarly, defendant argues that the State's conduct in purposefully eliciting evidence of alleged racial slurs made by defendant had no relevance to the issue of defendant's guilt. Defendant claims that such testimony was improper and prejudiced defendant's opportunity to receive a fair trial. Defense counsel failed to object to the complained-of testimony at trial and failed to raise this issue in his motion for a new trial. Accordingly, the defense has waived review of this issue on appeal. *Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.

■ Finally, defendant claims he was not proved guilty beyond a reasonable doubt where the evidence showed that he was entrapped into delivering the controlled substance. Defendant argues that he' was not predisposed to selling cocaine but, rather, he felt compelled to sell Castro the cocaine in order to secure Castro's automobile supplying services in the future. As noted, defendant may establish the defense of entrapment by showing improper inducement by the State and the defendant's lack of predisposition to commit the crime. See *People v. Cross*, 77 Ill. 2d 396, 396 N.E.2d 812 (1979). "However, [the defense] is inapplicable if [the undercover agent] merely affords to such person the opportunity or facility for committing an offense." 720 ILCS 5/7—12 (West 1992). The determination of whether a defendant is predisposed to commit a crime is fact dependent, and we will defer to the decision of the trier of fact. See *People v. Alcala*, 248 Ill. App. 3d 411, 618 N.E.2d 497 (1993).

In the instant case, Officer Castro testified about his interactions

with defendant. During the course of their relationship, defendant discussed stolen auto parts, describing what parts constituted "good movers," and explaining how to remove certain Chevy Blazer parts. In addition, defendant often discussed drugs. Defendant informed Castro that he liked marijuana, he was into cocaine, that he got his cocaine from Dickie Messino, and that his connection for marijuana had been busted in Texas. Officer Castro testified that it was defendant who first raised the subject of drugs. Castro testified that he informed defendant that he might be able to obtain marijuana for defendant only after defendant stated that his current connection was jailed in Texas.

Finally, the evidence surrounding the cocaine exchange belies defendant's claim that the jury erred in finding defendant predisposed to commit the crime. Castro informed defendant that he needed a source for cocaine. When defendant told Castro that he owed his cocaine connection money and might not be able to be of assistance, Castro told defendant that it was no problem. Defendant then told Castro that he would look into the situation further. Defendant later informed Castro that he could supply Castro with cocaine. Defendant set the price and the quantity of drugs to be exchanged. Defendant arranged the time and the place for the exchange. Defendant delivered a "pure" product to Castro in defendant's storage facility. Defendant's ownership and use of the drug scale demonstrated his familiarity with drug transactions.

We acknowledge that defendant declined Officer Castro's invitation to participate in drug transactions on prior occasions. This evidence was introduced at trial. Despite this, the jury found that defendant was predisposed to committing the crime. In light of the evidence presented by the State, however, we cannot find that the jury's determination was so unreasonable as to require reversal. *People v. Alcala*, 248 Ill. App. 3d 411, 618 N.E.2d 497 (1993).

Accordingly, we affirm defendant's conviction and sentence.

Affirmed.

GREIMAN, P.J., concurs.

JUSTICE ZWICK, dissenting:

My colleagues have failed to properly consider the law that governs the entrapment exception to the admission of so-called "other crimes evidence." A thorough review of the correct law in this area, as applied to the State's specific evidence, demonstrates that the defendant was forced to stand before a cascading landslide of irrelevant

and prejudicial testimony concerning his involvement with "stolen" auto parts. I must, therefore, strongly dissent from the court's order affirming defendant's conviction.

I begin by noting that the majority's reliance upon *People v. Millighan*, 265 Ill. App. 3d 967, 638 N.E.2d 1150 (1994), and *People v. Kimbrough*, 138 Ill. App. 3d 481, 485 N.E.2d 1292 (1985), is decidedly unhelpful. Neither case substantively addresses the defense of entrapment. The correct law is instead set out by our supreme court's decision in *People v. Tipton*, 78 Ill. 2d 477, 401 N.E.2d 528 (1980), which appears to be the court's most recent pronouncement on the issue of entrapment as it relates to other crimes evidence.

In *Tipton*, the court considered whether evidence of criminal acts committed by the defendant at a time subsequent to the time of the charged offenses could be introduced against the defendant, as an exception to the other crimes rule. As the majority in the present case correctly notes, and as *Tipton* discusses in detail, evidence of other crimes may be admitted against the defendant if it tends to show his criminal "predisposition" to rebut defendant's claim of entrapment. *Tipton*, 78 Ill. 2d at 484-85, citing *Sorrells v. United States*, 287 U.S. 435, 451-52, 77 L. Ed. 413, 422, 53 S. Ct. 210, 216 (1932). A careful reading of *Tipton* makes clear, however, that the State may not offer testimony of other crimes simply to establish defendant's general tendency to commit criminal acts. Rather, it is only evidence of the commission of other crimes that are specifically relevant to the defendant's claim of entrapment that may be admitted, as demonstrated by: (1) their similarity to whatever crimes are charged by the State, and (2) their proximity in time to the crime charged, whether committed prior to, or subsequent to, that crime. See *Tipton*, 78 Ill. 2d at 485. See also *People v. Outten*, 13 Ill. 2d 21, 25, 147 N.E.2d 284 (1958) (prior crimes may be admitted only as they "bear[ ] upon the issue of entrapment").

In this case the State charged defendant with specific crimes: possession of a controlled substance with intent to deliver and delivery of a controlled substance. At trial, however, the State did not limit its evidence to testimony regarding the drug charges or of defendant's predisposition to commit such an offense. Rather, the State introduced protracted testimony of defendant's activity in dealing in auto parts that the prosecutor and State witnesses again and again characterized as being "stolen." This was so even though there was no substantive evidence to establish such an irrelevant and patently prejudicial fact. See *People v. Karraker*, 261 Ill. App. 3d 942, 956-57, 633 N.E.2d 1250 (1994) (conviction of receipt of stolen property charge requires evidence of an identified owner to testify regarding his superior prop-

erty interest); see also *People v. Walters*, 69 Ill. App. 3d 906, 917, 387 N.E.2d 1230 (1979) (before evidence of another crime may be introduced, it must be shown that the crime actually occurred).

In my view, allowing argument and testimony regarding defendant's proclivity to deal in "stolen" auto parts delivered a body blow to defendant's right to a fair trial. Even a cursory review of the quantity and type of testimony presented by the State makes this conclusion abundantly clear.

The theme of the State's case started virtually with the prosecutor's first sentence. The prosecutor began, "Good morning. In September of 1991, the Illinois State Police received evidence that the defendant in this case, James Placek, was dealing in stolen auto parts." The State's opening statement then proceeded in earnest, replete with references to the "stolen" auto parts that the evidence would show were bought and sold by the defendant.

During the course of the trial the State introduced the testimony of Officer Kim Castro. He testified that he was a member of the special "SSATIN" unit, the South Suburban Auto Theft Interdiction Network. Officer Castro testified that the police had received information that defendant was involved in receiving stolen auto parts. Castro eventually met defendant through an informant, a man known to be a "very good car thief." Castro and defendant discussed how the informant was able to get parts easily from stolen cars. Castro told defendant that he had stolen auto parts for sale, and defendant told Castro that the parts he had were "not good movers." Defendant went on to explain what parts were "good movers." Defendant told Castro to contact him if he found any good parts to sell.

Castro continued to offer more testimony relative to the purportedly stolen auto parts, testimony which was irrelevant to the State's drug case. Castro testified that, on March 24, 1993, he met with defendant and sold defendant four mounted tires for $200. Officer Castro testified that he told the defendant that he and his brothers stole the tires. The tires had a "street value" of $600.

Officer Castro stated that he next met defendant on March 31, 1993. The meeting was at defendant's storage locker at the Space Place storage facility. Defendant had Castro block the door with his vehicle, and defendant bought parts from Castro for $200. These parts had a street value of $800.

On another occasion, subsequent to the March 31, 1993, meeting, Officer Castro stated he met defendant again at the Space Place and sold him tires for $300. These tires had a street value of $800 or $900.

Officer Castro next met with defendant on June 4, 1993. The two met at McDonald's, and they talked inside defendant's truck. Officer Castro told defendant that he knew of a "parts person" named "Julio."

Clearly, none of this testimony related to the crime for which defendant was charged or his predisposition to commit that crime, delivery of a controlled substance. Indeed, as I have already noted, there was not a scintilla of evidence to even establish that the parts sold to defendant had been stolen. Thus, it is plainly evident that testimony defendant dealt in "stolen" auto parts was wholly irrelevant. Accordingly, the exception to the introduction of other crimes evidence discussed in *Tipton* does not properly apply.

Nor does the fact that defendant admitted at trial he was involved in the purchase and sale of stolen parts change my analysis. It must be noted that the State admitted testimony regarding stolen auto parts *before* defendant had put on any evidence of how he was entrapped by police. To the extent that defendant offered testimony concerning his involvement in stolen auto parts, the record makes clear that he did so only to respond to the State's evidence, not as a central element of his entrapment defense. It was the trial court's erroneous denial of defendant's motion *in limine* to restrict the State's use of the stolen parts testimony and Officer Castro's testimony on the issue that forced defendant to defend in this way. Once the prosecution had established defendant was a fence, he had no other reasonable alternative.

Finally, even if it were assumed the testimony regarding stolen auto parts was somehow relevant to the State's drug case, which it was clearly not, it must be remembered that it is "incumbent upon the trial judge to weigh the relevance of the evidence to establish the purpose for which it is offered against the prejudicial effect the introduction of such evidence may have upon the defendant." *People v. Stewart*, 105 Ill. 2d 22, 62, 473 N.E.2d 840 (1984). Illinois law "*requires* that otherwise admissible evidence must be purged of references to other crimes if it is at all possible to do so without doing violence to the probative value of the evidence." (Emphasis added.) *People v. Bailey*, 88 Ill. App. 3d 416, 420, 410 N.E.2d 545 (1980).

Here, even if shown to be otherwise relevant, it was an abuse of the trial court's discretion not to have purged from the State's case references to "stolen" parts. Such an order would have had little or no adverse effect upon the trial of the issues properly presented and would have protected defendant's right to be fairly tried for the crime for which he was charged.

In sum, the defendant in this case was denied a fair trial by the

532

State's insistence on introducing prejudicial and irrelevant evidence against him, and by the trial court's refusal to limit the State to the specific issues properly raised. Accordingly, I would reverse and remand the case for further proceedings so as to afford the defendant a fair trial.